## WILLIAMS AND WILLIAMS vs. THE STATE OF MISSOURI.

1. The Supreme court will not set aside the verdict of a jury, unless their finding be grossly wrong.

2. To constitute a person a rioter, it is not necessary that he should be actively engaged in the riot; it is sufficient that he be present, giving countenance, support, or acquiescense.

3. The Statute which requires the name of a prosecutor to be *endorsed* on the indictment in certain cases, does not require the name to be on the *back* of the indictment. It is sufficient if it be on any part of the indictment.

### ERROR to Howard.

BELT, for Plaintiff in error.

#### POINTS AND AUTHORITIES.

1. The verdict of the jury was against evidence and the weight of evidence, and the court erred in refusing to grant a new trial.

2. The circuit court erred in refusing instructions asked by defendant, as it requires *three or more* to commit the offences charged in the indictment. See Revised code, p. 202-3, sec, 6, 7, 8; also Russell on Crimes, title *Riot*.

3. Verdict in this case erroneous as to William Williams, as there is not a syllable of evidence on which he could be convicted under either count of the indictment. See bill of exceptions throughout;

And court erred in refusing to set aside verdict against William Williams, and grant him a new trial.

4. There is no legal endorsement of the name of a prosecutor on the indictment, in the true meaning of the term *in dorsum*. See State vs. McCourtney, *et al*, 6 vol. Mo. R. 649-52, a case exactly in point. The *endorsement* in this case is appended to the last count in the indictment, and not superscribed upon the back of the indictment; this though a *technical* objection, can be taken by defendants. See State vs. McCourtney, above cited, and decisions there referred to.

STRINGFELLOW, for Defendant in error.

#### POINTS AND AUTHORITIES.

1. It is contended by the State that there was evidence to show that all who were present acted in concert, although Hines may have been most active. The jury properly decided upon *the weight of* evidence.

2. The court refused one instruction asked by defendant. The instruction did not contain the law, nor was it applicable to the evidence. The instruction given by the court contained the law.

3. The bill of exceptions does not show that there was no endorsement of the prosecutor's name—on the contrary the record states that it *was endorsed.* The part of the indictment on which the endorsement is made, is not material. See Rosco—Riot, State Mo. Pierre Williams, R. vol. 3, p. 419 and following.

McBRIDE, J. delivered the opinion of the court.

The defendants with one Jesse Hines, were indicted by the grand jury of Howard county, at the June term, 1844, for a writ under the seventh Article of an act entitled "an act concerning crimes and punishments," approved March 20, 1835, Revised Code, 201. The indictment contained several counts in the usual form. At the foot of the last count, after the name of the Circuit Attorney, is the following endorsement: "I hereby endorse my name on this indictment as the prosecutor in this cause. Signed—                          his

JOSEPH ⋈ BROWN."
mark.

At the December term following, Jesse Hines, not being found, a trial and verdict of guilty was had against the defendants, and a judgment entered thereon, to reverse which this cause has been brought here by appeal.

The testimony elicited on the trial, shows that Jesse Hines, and the two Williams's, with others, on the night of the 27th February last, after midnight, left their neighborhood and travelled twelve or fourteen miles to the house of Joseph Brown, for the purpose, as alleged by them, of searching for a runaway slave, supposed to be in that vicinity. The company started with two bottles of whiskey, which they replenished on the route, and when they reached a branch three or four hundred yards from Brown's house, they halted and entered into a conversation respecting Brown's character and conduct. One of the company stated that Brown was a bad man, if rumor is true; and if what he had heard about him was true, he ought to be whipped— they would go to Brown's house to warm and to hunt for the runaway negro, and thence to Rice Patterson's field, half a mile off, where they expected to find the negro, They went to the house, rapped at the door, and demanded admittance. Brown enquired who was there, and on being answered that they were friends, he said, "damn such friends,

he would not open his doors that time of night—he had no enemies in the neighborhood but the Williams's and the Yancey's." He was told if he did not open the door, they would break it down—some one called for a rail—then took a stick of wood and struck on the roof—threatened that they would enter the house through the roof, if the door was not opened, and a proposition was made to get upon the roof of the house. Brown was told that if he did not open the door and submit to have his house searched, they would procure a search warrant—he replied, that the negro was not there, nor had he seen him but once since he ranaway; that a few weeks previous some persons had searched his house for negroes and goods, as they said, and had pulled his house down. Brown got his gun, which being seen by Hines, he called for pistols, and directed two of the company to repair to the back door to prevent Brown's escape. The family of Brown were greatly alarmed. When the rioters were in the act of leaving the house, they informed Brown that a company of men would come from Cooper county, and drive him off; and when a short distance from the house they fired off a pistol. Hines was the leader of the party, and did most of the talking —no one discountenanced in any manner what was done.

The foregoing is substantially the evidence given on the trial, by some of those who accompanied the expedition. The testimony of Brown was somewhat variant. On the trial before the circuit court, the defendant asked the following instructions :

1. Before the jury can find either of the Williams's guilty, they must find that three or more persons assembled together with the intent, with force and violence, to commit the injury charged in the first four counts of the indictment.

2. To make a man a party in a riot, he must be active in doing, countenancing or supporting those who engage in such riot, or he must acquiesce in the same.

3. In case of a riot, the violence and tumult must, in some degree,be premeditated.

4. If the jury believe that Jesse Hines, alone, was engaged in the riot, or made an attempt to do an act, which would constitute him a rioter, without the defendants both assisting in such riotous acts, they will find the defendants not guilty.

5. If there is a reasonable doubt of the guilt of the defendants, they must find for them.

The court gave the first, second, third, and fifth, and refused the fourth instruction, to which refusal to give the fourth instruction, the defendants excepted.

Williams and Williams vs. The State of Missouri.

After the trial, the defendants moved the court to set aside the verdict assigning for reason that the verdict was against evidence, the weight of evidence, against the law, and the law and the evidence ; which being overruled, they excepted.

They then moved in arrest of judgment, for the reasons : *First*, The name of a prosecutor is not endorsed on said indictment ; *Second*, Because said indictment does not appear by an endorsement thereon, to be preferred upon the information or knowledge of two or more of the grand jury ; or on the information of some public officer. This motion being likewise overruled, they excepted to the opinion of the court in overruling the same.

The first question presented for the decision of this court, grows out of the refusal of the circuit court to grant a new trial. Was the evidence adduced on the trial, in the court below, sufficient to authorize the jury in finding a verdict of guilty against the defendants ?

An examination of the evidence as above detailed, will show that an outrage was perpetrated on the rights of Brown, by the defenants and others. If such conduct be tolerated by the juries of the country, and connived at by the courts, it will inevitably lead to fearful consequences. A citizen who cannot have the protection of the law thrown around him, when quietly and peaceably at home, with his family, will soon be driven to a vindication of his rights, even should it cost the aggressor his life. As the good order and well being of society depend mainly upon the protection which the law gives to individual rights, it becomes the imperative duty of those entrusted with its administration to see that none who violate its provisions escape punishment. Those who were engaged in the riot may have, indeed they must have understood Brown's character, otherwise the enterprise was an exceedingly reckless and hazardous one. If Brown had taken the life of any one, or all of them, he would have been justified by the moral sense of the community.

Although the Williams's were not so prominent as Hines, whoappears from the evidence to have been the leader of the posse, yet they were there giving countenance to what was done, and thus became participators in the riot. Besides, this court will not set aside a verdict where there is conflicting evidence, or any evidence upon which a finding could be predicated, unless the finding is a flagrant violation of justice. That power is more safely deposited in the circuit courts ; sitting in the vicinity where the alleged offence was committed, having the witnesses before them they are better enabled to determine whether injustice has been done in the premises.

The next question arises out of the refusal of the circuit court to give the fourth instruction asked for by the defendant.

By comparing that instruction with the second, which this court recognizes as law, it will be seen that there is a conflict between them.— It is not necessary, as the fourth instruction asked for, seems to assume that to constitute an individual a rioter, he should be actively engaged in such riot ; it is sufficient as set out in the second instruction, *that he be present giving countenance, support or acquiescence.* If the law were otherwise it would be easy to evade it.   Then it would only be necessary to put forward as an active agent, the least scrupulous and responsible of the rioters, whilst the others would stand and encourage him by their presence and approbation, and yet take no active direct part in what was being done.   The second instruction containing the law on that branch of the question, and the fourth being so framed as to impair the force of the second, and mislead the jury, the court did right in refusing to give it to the jury.

It is further assigned for error that "there was no sufficient and legal endorsement of a prosecutor on the indictment."   The 22d section of 3rd article of "an act to regulate proceedings in criminal cases," Rev. C. 481, provides that "no indictment for any trespass against the person or property of another not amounting to felony shall be preferred, unless the name of a prosecutor is endorsed thereon."   Is the writing at the foot of the indictment, as in this case, a compliance with the requisition of the statute ?   The only authority referred to by the defendant's counsel, and which he relies upon as being decisive on this point, is the case of the State vs. McCourtney and others, 6 Mo. R. 649. The court in that case say that "the statute requires this endorsement to be made before the bill is found, it is consequently a part of the indictment, and must appear on the back of the indictment, as well as the endorsement of the foreman of the grand jury, that the same is a true bill."   But what was the question then before the court, and to what was the attention of the Judge directed ?   This will be manifest by a brief review of that case.   That was also an indictment for a riot, without any attempt to endorse the name of the prosecutor, until the motion was made by the defendant to quash, because of the omission. The court sustained the motion ; quashed the indictment ; the State excepted and brought her writ of error.   The question then was, is it necessary on an indictment for a riot, that the name of a prosecutor should be endorsed.   The court decide that it is necessary, that the statute requires it ; but whether that endorsement should be on the back or on the inside of the indictment, is not decided in the case, as

the point was not necessarily involved in the enquiry, and the attention of the judge was not directed to it. If the court had so held in that case, the opinion would not be binding; but it cannot be regarded as a decision of the point now at issue. It is true, the court say "it must appear on the back of the indictment," but the language when construed with reference to the point then under consideration, only means that the name of a prosecutor must be endorsed somewhere on the indictment. The object of the statute is to impose a salutary restraint upon the getting up indictments, by requiring those who are mainly instrumental in procuring the indictment, to endorse their name as prosecutor, and subjecting them to the payment of costs under certain contingencies. That end can be attained as well and readily by the endorsement being made on the inside as on the back of the instrument; and indeed it is most convenient and proper so to make it. It being the universal practice, so far as we have knowledge, to make the endorsement on the inside of the indictment, we would not feel authorzed to change that practice, unless the point had been distinctly ruled otherwise.

We have been referred to the derivation of the word *endorsement*, which comes from *in* and *dorsum*, and signifies what is written on the back. An effort to limit and circumscribe the word *endorsement*, was made in *Dominus Rex* vs. *Johann Bigg*, in an ingenious argument before all the Judges at Sergeant's Inn, (see Pierre Williams' R. vol. 3, p. 419 and following,) but without success. By the statute of 8 and 9 W. 3, chap. 19, section 36, the raising an *endorsement* was made felony without clergy. The defendant under this statute was found guilty, of taking out a receipt written on the inside of a bank note, by the use of lemon juice, and a majority of the judges held it to be *raising an endorsement* within the meaning of the statute.

Judge Scott concurring in the opinion, the judgment of the circuit court is affirmed.

Judge Napton absent.