## DEER PARK (Village) v SCHUSTER

Common Pleas Court, Hamilton Co.

No. A-56919.

Jos. G. Gusweiler, Cincinnati, for plaintiff.

Fred W. Murphy, Cincinnati; J. F. Luebbers, Cincinnati, for defendant.

### OPINION

By MORROW, J.

Walter Schneider, Marshal of the Village of Deer Park, Hamilton County, filed an affidavit for a warrant setting forth that Joe Schuster "Did commit disorderly conduct in said Village, contrary to Ordinance No. 84-A, Sections 5 and 9," and pursuant to this affidavit a warrant was issued.

It appears that the defendant was arrested prior to the issuance of the affidavit, and later he was tried before the Mayor of Deer Park, where he pleaded not guilty. The Mayor found him guilty, however, and assessed a fine of ten dollars ($10.00).

A proposed Bill of Exceptions was submitted with criminal transcript by attorney for Schuster, together with notice of appeal on questions of law and fact, but the proposed Bill of Exceptions was not signed by the Mayor, who later signed what is entitled a "Statement of Facts", which was filed, and, by agreement of both parties, was considered the Bill of Exceptions, and presented to the Court as such.

Sections 5 and 9 of Ordinance No. 84-A of the Village of Deer Park read as follows:

"Section 5. **That it shall be unlawful for three or more persons to assemble in said Village on any of the sidewalks, streets, avenues, alleys, parks or vacant lots,** and there conduct themselves in a riotous manner, or in a manner annoying to persons passing by, or the occupants or residents of the adjacent buildings, **or to refuse or neglect, on being notified by the Marshal or Police Officer to do so, to forthwith quietly disperse.**"

"Section 9. That it shall be unlawful for any person to disturb the order and quiet of said Village by any unusual or unnecessary noise; to behave in a disorderly manner by wrangling, quarreling, fighting, or using obscene or profane language, or by any other disorderly or indecent conduct; to annoy any citizen thereof; or to permit the same to be done in his, or her, or their premises; and for the purposes of enforcing the provisions of this Section, it shall be lawful for any of the police to enter any house, outhouse, garden, or any place of amusement, to arrest any person violating same."

The "Statement of Facts", (Bill of Exceptions) reads in part as follows,

and I am bound to consider this as the only evidence adduced as to the alleged violation of the Ordinance by Schuster:

"The Marshal, Mr. Schneider, and his Deputy, John Hollatz both testified that they had asked a crowd of young men to disperse from the sidewalk at Matson and Blue Ash Avenues, and that Joseph Schuster had refused to do so, and had defied them and that they had then walked around the block to give them a chance to change their minds and leave. When they came back this defendant again defied the officers and refused to leave. The Marshal then placed him under arrest. The defendant resisted arrest, and force had to be used to put him under arrest and in jail.

All the defendant's witnesses testified, (who were members of this gang), that the defendant was not doing anything and that the Marshal and his assistant just grabbed him and put him in jail, no witness being refused a chance to testify.

As the Mayor, I had received complaints about this crowd of young men congregating on the corner annoying pedestrians and as a great deal of pre-Hallowe'en disturbance was going on I asked the Marshal to disperse the crowd if necessary. This request was made by me more than this one time.

All the young men that testified for the defendant, as far as I know, were a part of this crowd so could not be disinterested in my opinion. The Marshal and his assistant would have no object in starting trouble if the young defendant had obeyed the officers of the law.

That the whole crowd was unruly and defiant I personally know because the noise they made near the jail, after the arrest was made about 1 P. M., I could hear at my home a block away."

It will be noted that the Mayor stated that the Marshal was requested to disperse a crowd of young men on the corner, if necessary, on account of complaints that they were annoying pedestrians. However, the Mayor does not claim to have been present when the arrest was made, and, obviously. he does not know anything about the precise situation which prompted the arrest. The noise that the crowd made after the arrest, and which he refers to, of course, has nothing to do with what preceded the arrest, and prompted the arrest. Therefore, it seems to me that we are concerned with the first paragraph of the Bill of Exceptions above quoted.

## I.

The Marshal and his assistant state they asked a crowd of young men to disperse from the sidewalk at a certain corner, and that Joseph Schuster had refused to do so. It is also stated that the defendant defied them, and when they returned again defied them and refused to leave.

Section 9 of the Ordinance, which is alleged to have been violated by the affidavit and warrant, speaks of disturbing "The order and quiet of the village, quarreling, fighting, using obscene language, or by any other disorderly or indecent conduct, and annoying citizens." There is no statement in the Bill of Exceptions, in my opinion, which indicates that the defendant was violating Section 9. To be one of a crowd is not disorderly, and to refuse to surrender one's right to remain in a certain place on a public street, notwithstanding an order by a police officer to depart, in my opinion, is not disorderly conduct.

As is said by Justice Roberts in Hague v Committee for Industrial Organization, 307 U. S. 496, on Page 515, "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly; communicating thoughts between citizens and discussing public questions. Such use of the streets and public places has, from ancient times, been part of the privileges, immunities, rights and liberties of citizens."

In short, to emphatically refuse to

surrender an immemorial right even when called upon to do so by a police officer is not disorderly conduct. The Bill of Exceptions goes no further than to set forth this conduct of defendant. The officers do not claim quarreling, profanity, etc., prompted the arrest.

Therefore, it appears that the Bill of Exceptions does not show a violation by the defendant of Section 9 of Ordinance 84-A.

## II.

Another question is presented by the charge that defendant violated Section 5 of the ordinance. This ordinance provides in part "That it shall be unlawful for three or more persons to assemble in said Village on any of the side-walks, streets, avenues, alleys, parks or vacant lots, and there conduct themselves in a riotous manner." I am assuming that "A crowd of young men" means three or more. "A large number of persons congregated or collected into a close body without order; a throng". (Webster's Unabridged Dictionary). Remembering the old saying "Two are company; three is a crowd," and the definition of the word "riotous", which means disorderly, and is defined by Webster as "Wanton and unrestrained," (which implies disorder and turbulence), there is no evidence in the Bill of Exceptions that these young men were conducting themselves in a riotous manner at time of arrest.

(b) To form one of a crowd on a sidewalk at a street corner does not necessarily imply annoyance "to persons passing by, or occupants or residents of adjacent buildings." Hence we are not concerned with clause in ordinance referring thereto.

## III.

Now we come to the interesting clause in Section 5: "Or to refuse or neglect on being notified by the Marshal or police officer to do so, to forthwith quietly disperse."

It does appear that this portion of the ordinance was violated. That is to say, twice the defendant was asked (as a member of a crowd on a sidewalk at a street corner), to disperse. The word "disperse", of course, necessarily has a plural subject, and is synonymous with "scatter", or "Go different ways", as defined by Webster.

I am concerned with the question as to whether or not this clause of the ordinance is constitutional, and whether it violates the Fourteenth Amendment of the Constitution of the United States, and **Sec. 1, of Art. III, Constitution of Ohio.** As to the Fourteenth Amendment, the case above cited, Frank Hague individually as Mayor of Jersey City et al v Committee for Industrial Organization et al 307 U. S. 496, sets forth in Syllabus 6,

"The rights of freedom of speech and of peaceable assembly are protected against infringement by state action by the provisions of the Fourteenth Amendment, relating to due process and the privileges and immunities of citizens of the United States." That case, as this instant case, concerns a city ordinance, and the village being an arm of the state, or subdivision thereof, by ordinances accomplishes state action.

**Art. I, Sec. 3, Constitution of Ohio** states, "The people have the right to assemble together in a peaceable manner to consult for their common good; to instruct their representatives; and to petition the General Assembly for the redress of grievances."

Certainly the defendant here has violated the express terms of Section 5 of the Ordinance in this respect; To defy is to reject or repudiate or renounce, according to Webster, and certainly to defy an order of a police officer is to refuse or neglect to obey the same. The very act of defying such an order is a refusal (as one of a crowd) to quietly disperse forthwith, and the violation of this portion of the ordinance was complete when the defendant first defied the order of the Marshal to disperse.

It would appear, however, from a review of authorities that this clause of the ordinance violates the Fourteenth Amendment of the Constitution

of the United States. It is not so clear that there is a violation of **Art. I, Sec. 3 of the Constitution of Ohio.**

We will not discuss the question as to whether or not the warrant itself, or the affidavit for warrant, sufficiently advised the defendant of the offense with which he is charged, but will confine ourselves to a discussion of the constitutionality of the clause of Section 5, last above quoted. Under this section of the ordinance it would· appear that three or more persons on a sidewalk, who may be gazing in a shop window, and discussing the display. to the possible ultimate benefit of the merchant, who are members of a family, or who are a party of friends waiting for a bus, or who are, perchance, citizens discussing politics, baseball, or the war, may be approached by a Marshal, ordered to disperse, and upon their refusal so to do, convicted under this section of a misdemeanor, in the village of Deer Park.

Presumably, the Marshal and his deputy here had probable cause to order the quiet dispersion, and were not actuated by malice. Presumably, the Marshal and his deputy were· carrying out the provisions of this ordinance in good faith, and in the exercise of their offices, and pursuant to specific orders of the Mayor, as set forth in the Bill of Exceptions. The Marshal should not be blamed for seeking to enforce an unconstitutional ordinance. It is not his prerogative to pass upon the constitutionality of ordinances. "His not to reason why." In short, it was the duty of these officers and the Mayor to be unusually vigilant at the time of the arrest, namely October 30, and for the reason as stated by the Mayor in the Bill of Exceptions that "A great deal of pre-Hallowe'en disturbance was going on."

However, I am concerned with the bare facts setting forth the conduct of the defendant at the time of his arrest, and it merely appears he was one of a crowd on a sidewalk; was asked (as a member of such crowd) to disperse, and refused to do so.

It seems to me this ordinance is going too far. To assemble on the streets in numbers of three or more is not, in itself, a criminal act, and to vest a Marshal with the authority to summarily or capriciously order three or more persons on the sidewalk to disperse is to vest him with judicial, as well as executive powers, and the act in violation of this clause of the ordinance is not complete until a refusal by the person so ordered to quietly disperse. The refusal to obey a wholly unwarranted order to disperse given by one clothed with authority, in my opinion, is no more a criminal act than to be one of three or more persons who assemble on a sidewalk.

I assume that Schuster is a citizen.

There are a number of cases in other states which seem to cover similar ordinances. See St. Louis v Gloner, 210 Mo. 502. 15 LRA (NS) 973, 109 S. W. 30, where it was decided:

"An attempt by a municipal corporation to prohibit loitering on the streets so far as applied to persons conducting themselves in a peaceable, orderly manner, disturbing no one, and committing no overt act is an interference with the constitutional rights of personal liberty", in holding that an ordinance which provided: "Any person who shall—lounge, stand, or loaf around, or about, or at street corners or other public places, shall be deemed guilty of a misdemeanor."

In State v Hunter 106 N. C. 796, an ordinance provided that where three or more persons obstruct the sidewalk, it shall be the duty of the officer to courteously request them to move ,on, and if such persons unreasonably persist in remaining so as to incommode others passing, he shall take them to the station house, the Court held: "Merely standing still on a sidewalk and refusing to move at the command of a police officer does not make one guilty of nuisance." An ordinance providing that a person may be arrested and taken, without warrant or hearing to the station house because he refuses

to "move on" and in the opinion of the officer "unreasonably persists in remaining so as to incommode others passing", is in contravention of the constitution in that it subjects the citizen to imprisonment at the will of the officer, and without giving him an opportunity for trial or preliminary examination.

We may, of course, look back some three hundred years into history and find a similar law which was apparently found necessary in those troubled times. The clan MacGregor was composed, says Sir Walter Scott, "Of lawless though brave men." In those days they seem to have been a particularly violent, contumacious and rebellious tribe, and were a thorn in the side of King James VI of Scotland.

After the battle of Glenfruin, where they conducted themselves in a notoriously outrageous manner, and in an attempt to disperse them to the four winds, by act of the Privy Council, April 3, 1603, the name of MacGregor was expressly abolished, and the pain of death was denounced "against those who should call themselves Gregor or MacGregor the names of their fathers." They were also prohibited from carrying weapons "except pointless knives to eat their victuals," and as a crowning act of repressive legislation, on June 24, 1613, the penalty of death was denounced against any persons of the tribe formerly called MacGregor, "who should presume to assemble in greater numbers than four."

This last act was more liberal than the ordinance in question here, in that the minimum number forbidden to assemble was four and not three.

However, the Scotch of those days, as well as the Scotch of today, and contemporary Americans, would consider, doubtless, the penalty of death a more severe punishment than a ten dollar fine.

Joseph Schuster may have been as pestiferous in the eyes of the officers of Deer Park as a MacGregor in the eyes of King James VI, but in view of the provisions of the Fourteenth Amendment of the Constitution of the United States, I deem it my duty to set aside the conviction of Joseph Schuster by reason of the authorities set forth, and the reasons above stated.