CITY OF CLEVELAND, APPELLEE, *v.* ANDERSON ET AL.,
APPELLANTS.

(No. 28457—Decided February 15, 1968.)

*Mr. Paul D. White,* director of law, *Mr. James Carnes* and *Mr. Stanley L. Josselson,* for appellee.

*Mr. Jerry Gordon* and *Mr. Stanley E. Tolliver,* for appellants.

CORRIGAN, C. J. Appeal is before us herein from a conviction of eight defendants in the Municipal Court of Cleveland on February 6, 1967, charged jointly with violating Cleveland Municipal Ordinance Section 13.1124, titled "Participation in Disorderly Assemblies."

The case was tried to the court, and, upon conviction,

each defendant was fined twenty dollars, the maximum penalty under the ordinance. Motions for new trial, for judgment *non obstante veredicto* and for reduction of bond were each overruled. Execution of sentence was suspended and appeal bond set at one hundred dollars for each defendant. Notice of appeal on behalf of all eight defendants was filed on March 1, 1967. It should be observed that twenty-one other defendants, similarly charged, were acquitted by the trial court.

A brief statement of the facts as reflected by the bill of exceptions seems necessary. On November 13, 1965, a buffet dinner party was held at Debs Hall located on the second floor of a building at 5927 Euclid Avenue, Cleveland. The affair was a benefit for the Militant Newspaper, an admittedly Socialist publication. Approximately seventy-five people attended, and the party was quiet, orderly and convivial. At about 12:20 a. m. state liquor agents and Cleveland police officers in plain clothes entered the hall to investigate a liquor complaint. Arrests were made for liquor law violations. It was ascertained by the law officers that there was no license for the sale of alcoholic beverages, nor was there any permit for dancing.

After the liquor agents had arrested those individuals who were charged with illegally dispensing liquor, the persons present were asked to leave the hall. In response to that request more than half those in attendance donned their coats and hats and departed. At this point defendant Phillip Schneider moved to the center of the hall and said that nobody should leave and that "they can't make us leave. Make the sons of bitches drag us out." He was promptly placed under arrest, and then a melee developed.

It is undisputed that up to this point the party was a quiet, orderly affair. Immediately following Schneider's arrest, however, pandemonium erupted in the room. There was considerable yelling, cursing, shoving and pushing. Some of the people were apparently attempting to get out of the room, others seemed to be trying to get at the police. Scuffles occurred; police and guests were knocked down. One officer fired two shots into the ceiling, and another

called for reinforcements. With the arrival of uniformed police officers, order was finally restored. Thirty individuals, who were either found in the room or were ushered back to the room by patrolmen, were arrested and charged with violation of Cleveland Municipal Ordinance Section 13.1124, "Participation in Disorderly Assemblies":

"If any person shall knowingly and willfully constitute or make himself a part of any noisy, boisterous or disorderly assemblage of persons, countenancing the same by his presence, which annoys the inhabitants of the city, or any portion thereof, or disturbs the good order and quiet of the same, the person so offending shall, on conviction thereof, be fined in the sum not exceeding twenty dollars."

Appellants, defendants below, urge ten assignments of error, which are repetitious and overlap but which assert and reassert the important contention that the ordinance under which these defendants were charged is unconstitutional. We agree for the following reasons:

Although courts regard all constitutional rights as important, they place particular emphasis on First Amendment rights. 16 Corpus Juris Secundum 1162, Constitutional Law, Section 214; 10 Ohio Jurisprudence 2d 532, Constitutional law, Section 458. Freedom of assembly is a First Amendment right, as set forth in the Constitution of the United States:

"Congress shall make no law * * * abridging * * * the right of people peaceably to assemble * * *."

That prohibition is applicable to citizens of the state of Ohio, not only through operation of the due process clause of the Fourteenth Amendment to the United States Constitution, but also by virtue of Section 3, Article I of the Ohio Constitution, which reaffirms the right of people to assemble freely.

Freedom of assembly, however, can be limited by a local legislative authority through the legitimate use of its police powers. Section 3, Article XVIII, Ohio Constitution; 16 American Jurisprudence 2d 681, Constitutional Law, Section 355; 16 Corpus Juris Secundum 1166, Constitutional Law, Section 214. Examples of laws which limit

freedom of assembly are found in various riot acts, unlawful assembly laws, and ordinances prohibiting the blocking of sidewalks. The present question, however, is whether the above ordinance represents a "legitimate" exercise of the police power reserved to the city of Cleveland.

The Supreme Court of the United States has been careful not to restrict unduly the application of local police powers. A general limitation is expressed in *Goldblatt* v. *Town of Hempstead* (1962), 369 U. S. 590, at 594:

"* * * The term 'police power' connotes the time-tested conceptional limit of public encroachment upon private interests. Except for the substitution of the familiar standard of 'reasonableness,' this Court has generally refrained from announcing any specific criteria. * * *"

In the area of First Amendment rights, however, the Supreme Court is more specific:

"The power of a state to abridge freedom of speech and of assembly is the exception rather than the rule * * *. The limitation upon individual liberty must have appropriate relation to the safety of the state. Legislation which goes beyond this need violates the Constitution." *Herndon* v. *Lowry* (1937), 301 U. S. 242, paragraph three of the syllabus.

Ohio follows the general rule of limitation found in most states, which holds that an exercise of police power will be held valid if it bears a real and substantial relation to the public health, safety, morals or general welfare, and if it is not unreasonable or arbitrary. *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535; *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103.

There is authority in Ohio for an even narrower interpretation when First Amendment rights are threatened. In *State* v. *McLaughlin* (1965), 4 Ohio App. 2d 327, the court applied the "clear and present danger test" (*Terminiello* v. *Chicago* [1948], 337 U. S. 1; and *Elfbrandt* v. *Russell* [1966], 384 U. S. 11) to a free speech situation where a mother was convicted for contributing to the delinquency of a minor when she passed birth control information on to her daughter.

No matter whether a strict rule or a general rule of limitation is applied against the disorderly assembly ordinance, it is clear to us that this ordinance represents an abuse of the city of Cleveland's police power. As it is written, the ordinance makes mere presence at a noisy assembly a criminal act. It does not require that the potential defendant at such assemblage either commit any overt act or join in an intent to further the forbidden aims of the group. The "knowingly and willfully" portion of the ordinance expressly relates to *joining* the assembly. In its brief, appellee, plaintiff below, suggests that the ordinance is nothing more than a "group disorderly conduct" ordinance. It is evident, however, that one of the elements of disorderly conduct, namely, the commission of prohibited acts, words or conduct, is lacking from the instant ordinance. 57 Ohio Jurisprudence 2d 262, Words and Phrases; Section 2923.41, Revised Code. Other related ordinances of the city of Cleveland, such as those prohibiting loud noises, breach of the peace, and rude disturbances, require proof of offensive acts, words or conduct. Codified Ordinances of city of Cleveland, part 13 (1951), Sections 13.114, 13.115, 13.116, 13.1125, 13.1126.

Laws proscribing *unlawful* assembly probably provide the closest parallel to the ordinance in the case at bar. The elements of the offense of unlawful assembly are: (1) a gathering of persons, usually three or more, (2) with a common intent to achieve a purpose, lawful or unlawful, which will interfere with the rights of others, by committing disorderly acts in such a manner as to cause sane, firm, and courageous persons in the neighborhood to apprehend a breach of the peace. 46 American Jurisprudence 127, Riots and Unlawful Assembly, Section 3. There are many variations among the states as to the wording of unlawful assembly statutes. 71 A. L. R. 2d 875 *et seq.* Ohio's statute, for example, is combined with a prohibition against riot:

"No person shall assemble with two or more other persons to do an unlawful act with force and violence, or do such unlawful act or agree with each other to do so and make preparation or movement therefor. No person shall

continue together with two or more other persons after proclamation is made as provided in Section 3761.14 of the Revised Code or is prevented from so being made by rioters.'' Section 3761.13, Revised Code.

Despite the disparity among statutes, it is significant that they all require (1) an assembling, (2) a purpose, unlawful or, more infrequently, lawful, and (3) a common intent either to carry out the unlawful purpose or to carry out the lawful purpose in an unlawful manner. 71 A. L. R. 2d 875. There is some authority to the effect that the third element, ''a common intent,'' can be inferred from the mere presence of an individual at the site of an unlawful assembly. 18 U. Oregon Law Rev. 254, at page 256 (1939). The facts of the cases used to support this proposition, however, show that an accumulation of circumstances, including presence at the site of the disturbance, led the courts to decide that the individuals arrested formed a common intent to participate in the unlawful assembly. *Williams* v. *State* (1845), 9 Mo. 270; *State* v. *Mizis* (1906); 48 Ore. 165, 85 P. 611. Furthermore, in *Cole* v. *Arkansas* (1949), 338 U. S. 345, the Supreme Court, while upholding the constitutionality of an unlawful assembly statute, broadly hinted that it would strike down any attempt to stretch these statutes so as to incriminate an innocent member of a group merely because he was present at an assembly where violence took place. This view has been expressed and expanded more recently by the Supreme Court when it denounced the ''guilt by association'' aspects inherent in various state loyalty oaths. *Elfbrandt* v. *Russell* (1966), 384 U. S. 11.

Cleveland Ordinance Section 13.1124 plainly reads that mere presence is sufficient to make one a participant in and a contributor to a disorderly assembly. For that reason alone the ordinance constitutes an unreasonable exercise by the local legislative body of the law-making powers vested within it. The right of individuals to assemble and associate together is guaranteed by both the United States and Ohio Constitutions, and any legislative attempt to abrogate that right, even though motivated ostensibly by a

desire to insure peace and order in the city of Cleveland, cannot stand. *Gitlow* v. *People* (1924), 268 U. S. 652; *Thornhill* v. *Alabama* (1940), 319 U. S. 88; *Cantwell* v. *Connecticut* (1940), 310 U. S. 296; *Edwards* v. *South Carolina* (1963), 372 U. S. 229; *Deer Park* v. *Schuster* (Hamilton County Common Pleas Court, 1940), 30 Ohio Law Abs. 466; *Toledo* v. *Sims* (Toledo Municipal Court, 1960), 84 Ohio Law Abs. 476.

In addition to the above constitutional weakness, it is apparent that the city of Cleveland's disorderly assembly ordinance also fails to apprise an individual that his conduct is proscribed by law. It is therefore in conflict with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. *United States* v. *Cohen Grocery Co.* (1921), 255 U. S. 81; *Connally* v. *General Construction Co.* (1926), 269 U. S. 385; *Lanzetta* v. *New Jersey* (1939), 306 U. S. 451; *United States* v. *Harriss* (1954), 347 U. S. 612; *Ashton* v. *Kentucky* (1966), 384 U. S. 195; *Cleveland* v. *Baker* (Court of Appeals, 1960), 83 Ohio Law Abs. 502. As stated in *Connally* v. *General Construction Co.*, 269 U. S. 385, at page 391:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *"

In its brief, appellee argues that the constitutionality of the ordinance should be upheld because the lower court interpreted it in a constitutional manner. Appellee suggests that only those defendants who had committed overt acts were found guilty, and thus any uncertainty or vagueness as to application of the ordinance was eradicted by the lower court decision.

It is true, of course, that laws which might be considered unconstitutionally vague sometimes can be saved through careful judicial interpretation, c. f. *Cole* v. *Arkansas*, 338 U. S. 345, but it is difficult to understand how this argument is applicable to the present case. As stated earlier, it is questionable whether the language of the instant ordinance is susceptible of appellee's interpretation: "Countenancing * * * by his presence" surely is not synonymous with "overt acts." Furthermore, it is not at all clear that the lower court did limit application of the ordinance to those defendants who committed overt acts. One appellant (Sinclair), for example, is not even mentioned in the record of trial except in argument for discharge.

As it is written, the disorderly assembly ordinance could be used to incriminate nearly any group or individual. With little effort, one can imagine many "noisy or boisterous" assemblages which, at various times, might annoy some persons in the city of Cleveland. Anyone could become an unwitting participant in a disorderly assembly, and suffer the penalty consequences. It has been left to the police and the courts to decide when and to what extent ordinance Section 13.1124 is applicable. Neither the police nor a citizen can hope to conduct himself in a lawful manner if an ordinance which is designed to regulate conduct does not lay down ascertainable rules and guidelines to govern its enforcement. This ordinance represents an unconstitutional exercise of the police power of the city of Cleveland, and is therefore void. *Cleveland* v. *Baker*, 83 Ohio Law Abs. 502.

Accordingly, the conviction of each of the eight defendants, appellants herein, is reversed as being contrary to law, and judgment is hereby rendered discharging each of those defendants.

*Judgment reversed.*

WHITE and ARTL, JJ., concur.