## COATES ET AL. v. CITY OF CINCINNATI

No. 117.   Argued January 11, 1971—Decided June 1, 1971

STEWART, J., delivered the opinion of the Court, in which DOUGLAS, HARLAN, BRENNAN, and MARSHALL, JJ., joined.   BLACK, J., filed a separate opinion, *post*, p. 616.   WHITE, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN, J., joined, *post,* p. 617.

*Robert R. Lavercombe* argued the cause and filed a brief for appellants.

*A. David Nichols* argued the cause for appellee.   With him on the brief was *William A. McClain.*

MR. JUSTICE STEWART delivered the opinion of the Court.

A Cincinnati, Ohio, ordinance makes it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and there conduct themselves in a manner annoying to persons passing by . . . ." [1]

---

[1] "It shall be unlawful for three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners, vacant lots, or mouths of alleys, and there conduct themselves in a manner annoying to persons passing by, or occupants of adjacent buildings.   Whoever violates any of the provisions of this section shall be fined not exceeding fifty dollars ($50.00), or be imprisoned not less than one (1) nor more than thirty (30) days or both."   Section 901–L6, Code of Ordinances of the City of Cincinnati (1956).

The issue before us is whether this ordinance is unconstitutional on its face.

The appellants were convicted of violating the ordinance, and the convictions were ultimately affirmed by a closely divided vote in the Supreme Court of Ohio, upholding the constitutional validity of the ordinance. 21 Ohio St. 2d 66, 255 N. E. 2d 247. An appeal from that judgment was brought here under 28 U. S. C. § 1257 (2),[2] and we noted probable jurisdiction, 398 U. S. 902. The record brought before the reviewing courts tells us no more than that the appellant Coates was a student involved in a demonstration and the other appellants were pickets involved in a labor dispute. For throughout this litigation it has been the appellants' position that the ordinance on its face violates the First and Fourteenth Amendments of the Constitution. Cf. *Times Film Corp.* v. *Chicago*, 365 U. S. 43.

In rejecting this claim and affirming the convictions the Ohio Supreme Court did not give the ordinance any construction at variance with the apparent plain import of its language. The court simply stated:

> "The ordinance prohibits, *inter alia,* 'conduct . . . annoying to persons passing by.' The word 'annoying' is a widely used and well understood word; it is not necessary to guess its meaning. 'Annoying' is the present participle of the transitive verb 'annoy' which means to trouble, to vex, to impede, to incommode, to provoke, to harass or to irritate.

---

[2] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

.      .      .      .      .

"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

"We conclude, as did the Supreme Court of the United States in *Cameron* v. *Johnson,* 390 U. S. 611, 616, in which the issue of the vagueness of a statute was presented, that the ordinance 'clearly and precisely delineates its reach in words of common understanding. It is a "precise and narrowly drawn regulatory statute [ordinance] evincing a legislative judgment that certain specific conduct be . . . proscribed." ' " 21 Ohio St. 2d, at 69, 255 N. E. 2d, at 249.

Beyond this, the only construction put upon the ordinance by the state court was its unexplained conclusion that "the standard of conduct which it specifies is not dependent upon each complainant's sensitivity." *Ibid.* But the court did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man.[3]

---

[3] Cf. *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, where this Court upheld a statute that punished "offensive, derisive or annoying" words. The state courts had construed the statute as applying only to such words "as have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed." The state court also said: "The word 'offensive' is not to be defined in terms of what a particular addressee thinks. . . . The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . The English language has a number of words and expressions which by general consent are 'fighting words' when said without a disarming smile. . . . Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene revilings. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace." This Court was "unable to say that the limited scope of the statute as thus construed contravenes the Constitutional right of free expression." 315 U. S., at 573.

614

We are thus relegated, at best, to the words of the -ordinance itself. If three or more people meet together on a sidewalk or street corner, they must conduct themselves so as not to annoy any police officer or other person who should happen to pass by. In our opinion this ordinance is unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct.

Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning." *Connally* v. *General Construction Co.,* 269 U. S. 385, 391.

It is said that the ordinance is broad enough to encompass many types of conduct clearly within the city's constitutional power to prohibit. And so, indeed, it is. The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. *Gregory* v. *Chicago,* 394 U. S. 111, 118, 124–125 (BLACK, J., concurring). It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed.[4]

---

[4] In striking down a very similar ordinance of Cleveland, Ohio, as constitutionally invalid, the Court of Appeals for Cuyahoga County said:

"As it is written, the disorderly assembly ordinance could be used to incriminate nearly any group or individual. With little effort,

But the vice of the ordinance lies not alone in its violation of the due process standard of vagueness. The ordinance also violates the constitutional right of free assembly and association. Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms. See *Street* v. *New York,* 394 U. S. 576, 592; *Cox* v. *Louisiana,* 379 U. S. 536, 551–553; *Edwards* v. *South Carolina,* 372 U. S. 229, 238; *Terminiello* v. *Chicago,* 337 U. S. 1; *Cantwell* v. *Connecticut,* 310 U. S. 296, 311; *Schneider* v. *State,* 308 U. S. 147, 161. The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be "annoying" to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct.[5]

---

one can imagine many . . . assemblages which, at various times, might annoy some persons in the city of Cleveland. Anyone could become an unwitting participant in a disorderly assembly, and suffer the penalty consequences. It has been left to the police and the courts to decide when and to what extent ordinance Section 13.1124 is applicable. Neither the police nor a citizen can hope to conduct himself in a lawful manner if an ordinance which is designed to regulate conduct does not lay down ascertainable rules and guidelines to govern its enforcement. This ordinance represents an unconstitutional exercise of the police power of the city of Cleveland, and is therefore void." *Cleveland* v. *Anderson,* 13 Ohio App. 2d 83, 90, 234 N. E. 2d 304, 309–310.

[5] In striking down a very similar ordinance of Toledo, Ohio, as constitutionally invalid, the Municipal Court of that city said:

"Under the provisions of Sections 17–5–10 and 17–5–11, arrests and prosecutions, as in the present instance, would have been effective as against Edmund Pendleton, Peyton Randolph, Richard Henry Lee, George Wythe, Patrick Henry, Thomas Jefferson, George Washington and others for loitering and congregating in front of Raleigh Tavern on Duke of Gloucester Street in Williamsburg, Virginia, at any time during the summer of 1774 to the great annoy-

And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose association together is "annoying" because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens.[6]

The ordinance before us makes a crime out of what under the Constitution cannot be a crime. It is aimed directly at activity protected by the Constitution. We need not lament that we do not have before us the details of the conduct found to be annoying. It is the ordinance on its face that sets the standard of conduct and warns against transgression. The details of the offense could no more serve to validate this ordinance than could the details of an offense charged under an ordinance suspending unconditionally the right of assembly and free speech.

The judgment is reversed.

MR. JUSTICE BLACK.

*First.* I agree with the majority that this case is properly before us on appeal from the Supreme Court of Ohio.

*Second.* This Court has long held that laws so vague that a person of common understanding cannot know what is forbidden are unconstitutional on their face. *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939), *United States* v. *Cohen Grocery Co.,* 255 U. S. 81 (1921). Likewise, laws which broadly forbid conduct or activities which are protected by the Federal Constitution, such as, for instance, the discussion of political matters, are void on their face. *Thornhill* v. *Alabama,* 310 U. S. 88

---

ance of Governor Dunsmore and his colonial constables." *City of Toledo* v. *Sims,* 14 Ohio Op. 2d 66, 69, 169 N. E. 2d 516, 520.

[6] The alleged discriminatory enforcement of this ordinance figured prominently in the background of the serious civil disturbances that took place in Cincinnati in June 1967. See Report of the National Advisory Commission on Civil Disorders 26–27 (1968).

(1940). On the other hand, laws which plainly forbid conduct which is constitutionally within the power of the State to forbid but also restrict constitutionally protected conduct may be void either on their face or merely as applied in certain instances. As my Brother WHITE states in his opinion (with which I substantially agree), this is one of those numerous cases where the law could be held unconstitutional because it prohibits both conduct which the Constitution safeguards and conduct which the State may constitutionally punish. Thus, the First Amendment which forbids the State to abridge freedom of speech, would invalidate this city ordinance if it were used to punish the making of a political speech, even if that speech were to annoy other persons. In contrast, however, the ordinance could properly be applied to prohibit the gathering of persons in the mouths of alleys to annoy passersby by throwing rocks or by some other conduct not at all connected with speech. It is a matter of no little difficulty to determine when a law can be held void on its face and when such summary action is inappropriate. This difficulty has been aggravated in this case, because the record fails to show in what conduct these defendants had engaged to annoy other people. In my view, a record showing the facts surrounding the conviction is essential to adjudicate the important constitutional issues in this case. I would therefore vacate the judgment and remand the case with instructions that the trial court give both parties an opportunity to supplement the record so that we may determine whether the conduct actually punished is the kind of conduct which it is within the power of the State to punish.

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, dissenting.

The claim in this case, in part, is that the Cincinnati ordinance is so vague that it may not constitutionally

be applied to any conduct. But the ordinance prohibits persons from assembling with others and "conduct[ing] themselves in a manner annoying to persons passing by . . . ." Cincinnati Code of Ordinances § 901–L6. Any man of average comprehension should know that some kinds of conduct, such as assault or blocking passage on the street, will annoy others and are clearly covered by the "annoying conduct" standard of the ordinance. It would be frivolous to say that these and many other kinds of conduct are not within the foreseeable reach of the law.

It is possible that a whole range of other acts, defined with unconstitutional imprecision, is forbidden by the ordinance. But as a general rule, when a criminal charge is based on conduct constitutionally subject to proscription and clearly forbidden by a statute, it is no defense that the law would be unconstitutionally vague if applied to other behavior. Such a statute is not vague on its face. It may be vague as applied in some circumstances, but ruling on such a challenge obviously requires knowledge of the conduct with which a defendant is charged.

In *Williams* v. *United States*, 341 U. S. 97 (1951), a police officer was charged under federal statutes with extracting confessions by force and thus, under color of law, depriving the prisoner there involved of rights, privileges, and immunities secured or protected by the Constitution and laws of the United States, contrary to 18 U. S. C. § 242. The defendant there urged that the standard—rights, privileges, and immunities secured by the Constitution—was impermissibly vague and, more particularly, that the Court was often so closely divided on illegal-confession issues that no defendant could be expected to know when he was violating the law. The Court's response was that, while application of the stat-

ute to less obvious methods of coercion might raise doubts about the adequacy of the standard of guilt, in the case before it, it was "plain as a pikestaff that the present confessions would not be allowed in evidence whatever the school of thought concerning the scope and meaning of the Due Process Clause." *Id.,* at 101. The claim of facial vagueness was thus rejected.

So too in *United States* v. *National Dairy Corp.,* 372 U. S. 29 (1963), where we considered a statute forbidding sales of goods at "unreasonably" low prices to injure or eliminate a competitor, 15 U. S. C. § 13a, we thought the statute gave a seller adequate notice that sales below cost were illegal. The statute was therefore not facially vague, although it might be difficult to tell whether certain other kinds of conduct fell within this language. We said: "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Id.,* at 33. See also *United States* v. *Harriss,* 347 U. S. 612 (1954). This approach is consistent with the host of cases holding that "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States* v. *Raines,* 362 U. S. 17, 21 (1960), and cases there cited.

Our cases, however, including *National Dairy,* recognize a different approach where the statute at issue purports to regulate or proscribe rights of speech or press protected by the First Amendment. See *United States* v. *Robel,* 389 U. S. 258 (1967); *Keyishian* v. *Board of Regents,* 385 U. S. 589 (1967); *Kunz* v. *New York,* 340 U. S. 290 (1951). Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is

permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. *Dombrowski* v. *Pfister,* 380 U. S. 479, 491–492 (1965). The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights. See *United States* v. *National Dairy Corp., supra,* at 36.

Even accepting the overbreadth doctrine with respect to statutes clearly reaching speech, the Cincinnati ordinance does not purport to bar or regulate speech as such. It prohibits persons from assembling and "conduct[ing]" themselves in a manner annoying to other persons. Even if the assembled defendants in this case were demonstrating and picketing, we have long recognized that picketing is not solely a communicative endeavor and has aspects which the State is entitled to regulate even though there is incidental impact on speech. In *Cox* v. *Louisiana,* 379 U. S. 559 (1965), the Court held valid on its face a statute forbidding picketing and parading near a courthouse. This was deemed a valid regulation of conduct rather than pure speech. The conduct reached by the statute was "subject to regulation even though [it was] intertwined with expression and association." *Id.,* at 563. The Court then went on to consider the statute as applied to the facts of record.

In the case before us, I would deal with the Cincinnati ordinance as we would with the ordinary criminal statute. The ordinance clearly reaches certain conduct but may be illegally vague with respect to other conduct. The statute is not infirm on its face and since we have no information from this record as to what conduct was

charged against these defendants, we are in no position to judge the statute as applied. That the ordinance may confer wide discretion in a wide range of circumstances is irrelevant when we may be dealing with conduct at its core.

I would therefore affirm the judgment of the Ohio Supreme Court.