Sharon **CANTRELL**, Harold **Branham**,
Petitioners,

v.

Oscar **FOLSOM**, as Chief of Police, Daytona Beach, Florida, Respondent.

**Civ. No. 71–333.**

United States District Court,
M. D. Florida,
Jacksonville Division.

July 29, 1971.

768

Thomas A. Goldsmith, Daytona Beach, Fla., Morris W. Milton, Volusia County Legal Services, Daytona Beach, Fla., for petitioners.

Noah C. McKinnon, Jr., Coble, Stewart & McKinnon, Daytona Beach, Fla., for respondent.

## ORDER

CHARLES R. SCOTT, District Judge.

On May 10, 1971, petitioners submitted their petitions for writs of habeas corpus attacking their convictions and detention as unlawful due to the unconstitutionality of the vagrancy ordinance under which they were arrested alleging it to be so vague, indefinite and overbroad as to constitute a denial of due process.

The particular ordinance in question reads: "It shall be unlawful for any person to commit, within the limits of the city, any act which is recognized by the Florida Statutes as a misdemeanor, and the commission of such act is hereby forbidden". Daytona Beach Code, § 29–1. The particular statute incorporated by reference reads as follows:

"*Vagrants.*—Rogues and vagabonds, idle or dissolute persons who go about begging, common gamblers, persons who use juggling, or unlawful games or plays, common pipers and fiddlers, common drunkards, common night walkers, thieves, pilferers, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons who neglect their calling or employment, or are without reasonably continuous employment or regular income and who have not suffi-cient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, idle and disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, persons able to work but habitually living upon the earnings of their wives or minor children, and all able-bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03."

Florida Statutes 856.02, F.S.A.

On May 25, 1971, after the Court had issued its order to show cause in the case at bar, the City of Daytona Beach moved to vacate the underlying convictions of these petitioners in what is alleged to be an attempt to moot the habeas corpus proceedings of the petitioners in *this* Court. It is further alleged that the only reasonable explanation for these dismissals is that respondent wishes to avoid a formal adjudication by the courts that the ordinance under which the arrests were made is unconstitutional, and that the respondent is aware of the unconstitutionality of the ordinance; this, it is alleged, would leave the door open to further arrests and harassment without the possibility of a head-on meeting of the issue.

Petitioners subsequently moved to amend the petitions praying leave to proceed as a class and a declaration that the ordinance is unconstitutional; this prayer was based upon the above-mentioned allegations. See Adderley v. Wainwright, 46 F.R.D. 97 (M.D.Fla. 1968), 272 F.Supp. 530 (M.D.Fla.1967); McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed.2d 238 (1934); 28 U.S.C. § 2243. Petitioners seek to proceed as a class on behalf of all those who might fall and are falling subject to prosecution for vi-

olation of the ordinance. It is alleged that joinder of all members of the class is impracticable, that there are questions of law and fact common to the class, that the claims or defenses of the representative parties are typical of the claims or defenses, of the class and that the representative parties will fairly and adequately protect the interests of the class. They further allege that the opposing parties in this action have acted or refused to act on grounds generally applicable to the class.

At a hearing in chambers on July 9, 1971, the Court indicated that it would be receptive to a representation from respondent that the arrests under the ordinance had ceased and no further such arrests would be made. At this point in the hearing, petitioners presented, much to the surprise of counsel for respondent, affidavits reflecting that persons were still being arrested pursuant to the ordinance contrary to the best advice of counsel for respondent. Counsel for respondent sought and the Court granted them time to verify the affidavits.

On July 17, 1971, this Court received a verification from counsel for respondent that the arrests under the ordinance *were* continuing and that, contrary to his advice, arrests in the future would be made. A letter to the Court reflects the names of 20 persons so arrested between June 7, 1971 and the date of the letter.

The above state of circumstances indictates that it is appropriate for the action to proceed as a class action. Rule 23, Federal Rules of Civil Procedure; Montgomery Ward & Co. v. Langer, 168 F.2d 182, 187 (8th Cir. 1948).

■ It has been suggested that this is a matter for a three-judge court to rule upon. The Court relies upon the language of the Supreme Court of the United States in several cases which imply that the prohibition against issuance of an injunction against enforcement of a state statute without calling a three-judge court is strictly construed, and does not apply to city ordinances. "The word 'statutes', the Supreme Court says, is 'a compendious summary of various enactments, by whatever method they may be adopted, to which a state gives her sanction and is at least sufficiently inclusive to embrace constitutional provisions'. [American Federation of Labor v. Watson, 327 U.S. 582 [66 S.Ct. 761, 90 L.Ed. 873] (1946)]. It does not include ordinances or statutes having only local application. [Ex parte Collins, 277 U.S. 565 [48 S.Ct. 585, 72 L.Ed. 990] (1928)]." Law of Federal Courts, Wright, § 50, speaking of 28 U.S.C. § 2281, which respondent urges as applicable. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941) for the proposition that the three-judge court acts should be strictly construed. Although no injunction is sought in this action, the above authorities seem relevant because of the injunctive effects of a declaratory judgment.

Certainly the declaratory relief sought is available in the appropriate circumstances. See Federal Habeas Corpus, Sokol, § 6.2; United States v. Martin, 242 F.2d 701 (2d Cir. 1957):

'If the petitioner shows that he "is suffering and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault," then the alternatives are to deny the petitioner a judicial remedy in the federal courts—an alternative that would reflect badly on our system of justice; to give him judicial access by means of habeas corpus; to give him judicial access not by habeas corpus but by some other means.'

*Sokol*, at page 79, citing from the opinion in Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

■ It appears that the facts averred under the existing circumstances present a real controversy between the parties having adverse legal interests of such immediacy and reality as to warrant a declaratory judgment. Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L. Ed. 1450 (1943).

■ The Court does not think that this is the sort of case the Supreme Court of the United States had in mind recently when it warned against the unnecessary interference of the federal court in pending prosecutions. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, 1971, is distinguishable from the very outset in the fact that pending prosecutions are not the only problem in this case and are only incidentally involved. There is indication that those who are awaiting trial would never be given the full spectrum of available state remedies. This is to be inferred from what has happened to persons arrested pursuant to the ordinance in the past, such as the original petitioners. The Supreme Court certainly did not disapprove of interference in prosecutions in the appropriate circumstances. Another distinguishing point is that in the instant case there is the definite problem of harassment which the Supreme Court in the Younger v. Harris line of cases said may be justification for interference in state matters. By continuing to enforce the ordinance in spite of the best advice of counsel that the ordinance is probably unconstitutional, the respondent has evidenced at least a degree of bad faith. See Duncan v. Perez, 445 F.2d 557, 5th Cir. 1971) indicating that there defintiely are Court of Appeals for the Fifth Circuit, 1971, indicating that there definitely are circumstances which would overcome this branch of the abstention doctrine.

The facts in the instant case, which are not in dispute, differ significantly from those in Younger v. Harris, *supra*. There it is obvious from the language of Mr. Justice Black that the non-interference policy dictated there was directed at non-interference in *prosecutions* and that the underlying reasoning behind this policy, aside from the usual ill feelings that result from the state-federal conflict, was that there was an avenue open to vindicate the rights asserted by the complainants through the ordinary processes of the criminal prosecutions:

"In other words, the injury that Harris faces is solely 'that incidental to every criminal proceeding brought lawfully and in good faith.'" Citing from Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), Younger v. Harris, 401 U.S. at 49, 91 S.Ct. at 753.

The conceded facts of the case before this Court show that there are no continuing prosecutions in which the petitioners may vindicate their fights, that the arrests are made, the petitioners immediately booked and released with no intention whatsoever to bring petitioners to trial. It can be for no other purpose than to harass the petitioners that these arrests are made; it can be for no other reason than to deny petitioners due process of law that they are never given their day in court; it can be for no other motive but one of bad faith that the arrests continue in the face of warning by counsel that the ordinance under which they are proceeding is probably unconstitutional; the Court believes these to be true for the reason that no other explanation has been offered.

■ There is an additional good reason for not requiring a three-judge panel in this case; that reason is pointed out by Judge Henry J. Friendly in Utica Mutual Insurance Co. v. Vincent, 375 F. 2d 129, 131 n. 1 (2d Cir. 1967):

Congress could not have intended to require three judges to be assembled when decision could not possibly go in any manner save one.

In light of the reasons set out above and in light of a recent decision of a three-judge panel holding the very same language as continued in the *state* statute to be unconstitutional, this Court is inclined to hold 28 U.S.C. § 2281 does not require three judges when, as here, prior decisions make frivolous any claim that a state statute on its face is not unconstitutional. The reasons for convening an extraordinary court are inapplicable in such cases; the statute comes into play only when an injunction is

sought 'upon the ground of the unconstitutionality' of a statute. There is no such ground when the constitutional issue is essentially frivolous. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). The case of Lazarus v. Faircloth, 301 F.Supp. 266 (S.D.Fla. 1969), vacated in order that the district court could review its decision in light of Younger v. Harris, *supra*, concluded that the state statute there in question (which is the identical statute incorporated in the instant case into the city ordinances by reference), Florida Statute § 856.02, F.S.A. is unconstitutional. The Court sees no reason why the ruling of the three-judge court in *Lazarus* on the question of constitutionality should not be followed.

■ With all due respect for the colorful and attractive language of this "charming grab bag of criminal prohibitions", and for the number of years it has been on the statute books, it is clear under recent cases of the Supreme Court of the United States that the statute is so overbroad as to include lawful conduct within its sweep and that the ordinance on its face is unconstitutional in violation of the First and Fourteenth Amendments. Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214, 1971, and Palmer v. City of Euclid, Ohio, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98, 1971; *Lazarus, supra.*

The ordinance in *Palmer* was held to be so vague and lacking in ascertainable standards of guilt that it failed to give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden \* \* \*", citing from United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), 402 U.S. at 545, 91 S.Ct. at 1564.

The ordinance here is very similar to the one challenged in *Palmer*, defining a "suspicious person" as "Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself".

It is apparent to the Court that neither the police nor a citizen can hope to conduct himself in a lawful manner if an ordinance which is designed to regulate conduct does not lay down ascertainable rules and guidelines to govern its enforcement. City of Cleveland v. Anderson, 13 Ohio App.2d 83, 234 N.E.2d 304, approved in *Coates, supra*, 402 U.S. at 614–616, 91 S.Ct. at 1688–1689.

For what other reason than for harassment do the police in the instant action arrest persons and immediately let them go without any desire or intent to ever bring the persons to trial? When very recently, the Supreme Court of Florida has said that the very same words which are incorporated in this statute *are* constitutional, where else but to the federal courts are the petitioners to turn for relief? And what other relief than that sought will possibly do justice under the facts and circumstances before the Court?

The answers to the above questions are obvious and leave the Court but one course of action.

Therefore, it is

Ordered:

1. The petition for writ of habeas corpus, appearing moot, is denied.

2. Petitioners are allowed to maintain this action on behalf of the class.

3. Respondent's motion to dismiss is denied.

4. Petitioners' motion for summary judgment under Rules 56(a) and 56(e) of the Federal Rules of Civil Procedure, is granted.

5. It is hereby declared that the ordinance in question here, Ordinance of the City of Daytona Beach, Florida, 29–1 (incorporating by reference, Florida Statute 856.02, F.S.A.), is unconstitutional on its face and that the right of the petitioners here includes the right not to be arrested under color of such ordinance.