GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

RONALD PARIS, Defendant

Crim. No. 55-1973

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

KEITH BATTISTE, Defendant

Crim. No. 56-1973

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 2, 1973

ATTORNEY GENERAL of the Virgin Islands, *for plaintiff*

MARIO BRYAN, ESQ., St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

OPINION

By Act No. 3383 passed February 1, 1973, and approved by the Chief Executive February 15, 1973, the Legislature of the Virgin Islands amended 14 V.I.C. § 2221 by adding

212

two new subsections, (15) and (16). It is with the latter that we are concerned. Section 2221(16) would punish as a vagrant,

Whoever
loiters or remains in or about any public building or facility, including a local or federal government building, a warehouse, place of business or worship, transportation facility, hotel or guesthouse, without apparent legitimate purpose or business therein and, in so doing, obstructs or interferes with the legitimate business of another person, or intentionally annoys or harasses such other person;

On March 22, 1973, defendants Paris and Battiste were charged under the vagrancy statute set out above. Insofar as is here pertinent, the complaint as to each defendant, subscribed and sworn to, in each case, by a police officer before an Assistant Attorney General of the Virgin Islands, charged that defendants,

On the 17th day of March, 1973, in St. Thomas, did, at about 2:30 p.m., in the vicinity of the main post office commit the crime of vagrancy in violation of 14 V.I.C. § 2221(16) [amended].

It is to be deduced from the transcript that the cases had been called and continued at least once. In any event, these cases finally came on for trial in the municipal court on March 13, 1973. On that date the court, on its own motion, without previous notice to the parties, without hearing and without granting an adjournment as requested by the prosecuting assistant attorney general so that he might prepare to defend the statute against the surprise constitutional challenge mounted by the court, and also apparently before arraigning all of the defendants, declared the law on its face "constitutionally defective."

█ In ruling that subsection (16) was a nullity, the court below relied wholly and solely on the decision of the United States Supreme Court in Coates et al. v. City of Cincinnati, 402 U.S. 611 (1971). In that case, the Supreme

213

Court struck down an ordinance of that Ohio city as constitutionally infirm, being violative of the First and Fourteenth Amendments to the Constitution, for vagueness and overbreadth. In pertinent part, the ordinance invalidated in Coates declared,

> It shall be unlawful for three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners, vacant lots or mouth of alleys, and there conduct themselves in a manner annoying to persons passing by, or occupants of adjacent buildings.

As I read and compare the Coates ordinance and the Virgin Islands enactment, I find myself unable to agree with the conclusion reached by the municipal court. Two guiding precepts, of which courts construing statutes should never lose sight, lead me to the opposite result. The first is that surgical precision cannot be achieved and should not be sought or expected in legislative draftmanship.

> Condemned to the use of words, we can never expect mathematical certainty from our language (Marshal J. in Grayned v. City of Rockford, 408 U.S. 104, 110 (1972)).

As the justice pointed out, it is sufficient if the statute is marked by "flexibility and reasonable breadth rather than meticulous specificity". (Citation omitted.) Secondly, unless the invalidity of the statute is manifest by a standard at least as secure as beyond reasonable doubt:

> A proper deference to the legislative plans of the government requires that such questions should be approached with cautious circumspection. State Ex Rel. Forcheimer v. LaBland, 108 Ohio State 41, 140 N.E. 491.

With those two pillars as my starting point, I review both statutes for a brief comparative analysis. Summing up the shortcomings of the Cincinnati legislation, the Supreme Court said,

We are thus relegated, at best, to the words of the ordinance itself. If three or more people meet together on a sidewalk or a street corner, they must conduct themselves so as not to annoy any police officer or other person who should happen to pass by. In our opinion this ordinance is unconstitutionally vague because it subjects the exerciser of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct.

Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard but rather in the sense that no standard of conduct is specified at all. As a result "men of common knowledge must necessarily guess at its meaning". Connally v. General Construction Company, 269 U.S. 385, 391 (1926).

## Again the high court pointed out,

But the vice of the ordinance lies not alone in its violation of the due process standard of vagueness. The ordinance also violates constitutional rights of free assembly and association. Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgement of these constitutional freedoms. (Citations omitted.)

The teachings of Connally v. General Construction Company, supra, have lost none of their vitality by reason of the passage of time, and none would dispute its holdings that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, denies due process of law. As I read the local statute, however, none of the factors which compelled the Connally and Coates result are there present. In my view, subsection (16) can, without difficulty, be read as barring only the conduct which the legislature evidently deemed obnoxious. This statute is narrowly drawn and is particularly designed to proscribe specific unacceptable social conduct. This law does not purport to regulate conduct on streets and sidewalks. It is not aimed at speech or the

215

right of assembly. By no semantic legerdemain can one claim that its language prohibits constitutionally protected activity.

This law seeks to carry out compelling general interests in words that are commonly understood. In this territory,

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning. 1 V.I.C. § 42.

In the light of the foregoing section, to loiter or remain, conveys the meaning of being aimlessly present, or, colloquially, "hanging around". None should be puzzled by what is a public building or facility and once the building is identified, the legitimate purpose or business which might call one in such building or facility becomes obvious. By way of example, one goes to church to indulge in some form of worship; to a post office for mail related activity; to a library to read; to a courthouse to file papers, read posted notices, participate in, or hear and observe, court proceedings. This statute does not punish for merely "hanging around" in such places, singly or in congregation, even though you are there without legitimate purpose. You must either obstruct or interfere with the legitimate business (bearing in mind the building or facility) of another. Questioning the specificity, in the criminal law, of words such as obstruct or interfere is but a mere cavil. Year in and year out our courts without problem deal with persons charged with obstructing police officers in the discharge of their duties, action which is condemned in 14 V.I.C. § 1508. This court has never found the word "interfere" to suffer from vagueness when trying and punishing persons for violating 18 U.S.C. § 111 if they are found to have interfered with any one of the several designated federal

officers in the performance of their official function. It bears particular mention, incidentally, that the Supreme Court of the United States has upheld 18 U.S.C. § 111 in all respects. This Virgin Islands statute goes beyond the cited examples. It inserts the element of intent (wilfulness). It does not seek to prohibit, as did the ordinance in Coates, conduct which the subjective sensibility of any passerby might find annoying. Annoyance and harassment become elements of the offense only if the actor intentionally annoys and harasses a specific person or persons. This heavy burden of proving intent the government has to bear.

In sum then, if one goes to a public place for reasons other than the business connected therewith or at that place, *and* that person remains thereafter for some appreciable time, *and* while there obstructs or interferes with persons legitimately conducting their business at that place, or by intentional conduct annoys or harasses people there for lawful purposes, all to the extent that it reasonably appears that the actor's sole purpose at that public building or facility is to accomplish these anti-social deeds, *and* if the government proves all of this to the requisite standard of the criminal law, then that person is what the legislature deems a vagrant. Whoever would avoid being so characterized should refrain from doing the positive acts proscribed.

This is not a case of a statute making "a crime out of what under the Constitution cannot be a crime" (402 U.S. at 616). It is truly to be lamented in this case that the government was not permitted the opportunity to make a record of the conduct found to be annoying and to have submitted its argument in an effort to uphold the legislation. Had that been done, whatever clauses of the statute might have been found to be vague in some degree, read together with the other language of the statute, might have saved it from condemnation. Obviously, even though a statute be in some respects imprecise, if in its other basic parts it does

define an offense which gives adequate notice, the entire statute should not be hewn down.

■ For all of the foregoing, I disagree with the conclusion of the municipal court. I conclude that 14 V.I.C. § 2221(16) in no way entrenches on constitutionally protected rights. I find the rationale of Coates v. City of Cincinnati, supra, to be inapplicable and as a consequence, I uphold the validity of the statute.

If after the remand that will follow, the government intends to go forward on these cases, the complaints must be redrafted. It will not suffice to charge that a defendant did "in the vicinity of the main post office commit the crime of vagrancy in violation of 14 V.I.C. § 2221(16) [amended]." No person can prepare to defend himself against such an amorphous allegation. The complaint indeed suffers from vagueness and does indeed employ the broad sweep approach. This circumstance may well have caused the court to relate the obvious infirmity of the complaint to the wording of the statute, with the resulting finding of constitutional impermissibility. However, the statute should not be faulted for the careless draftmanship of a complaint which purports to be pitched in accordance with its terms.