**Walter DAVIS, Petitioner,**

v.

**Honorable C. Howard JOHNSON,**
**Respondent.**

**Civ. A. No. C–2–76–159.**

United States District Court,
S. D. Ohio, E. D.

April 22, 1976.

Gregory L. Ayers, Columbus, Ohio, for petitioner.

William G. Huggins, Asst. Pros. Atty., Columbus, Ohio, for respondent.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

Petitioner Walter Davis, having been convicted in the Municipal Court of Franklin County, Ohio, of violating the criminal trespass ordinance of Columbus, Ohio, and having exhausted his state appeals, seeks a determination from this Court adjudging the ordinance to be unconstitutionally vague or overbroad. Respondent moves to dismiss the petition.

In denying Davis' direct appeal from his conviction, the Court of Appeals of Franklin County rendered an opinion in which the evidence adduced in the trial court was summarized as follows:

> In the record, we find there is testimony in the transcript of proceedings by Steve Mosel, manager of the Columbus Greyhound Food Management, that since he was employed there eight months previously, he had seen defendant nearly every day in the bus terminal selling rings, blocking entrance to the bar, approaching people coming in and out, and in the game room; that he had never seen defendant eating in the restaurant, or buying a ticket; that he, Mosel, was authorized by the management to serve notice on individuals with respect to whether they could stay on the premises; that in the afternoon of September 26, 1974, he saw defendant in the Greyhound premises; that he told defendant to please leave the terminal; that defendant did not leave the premises during his shift, which ended at 11:00 p. m. .

> Thomas Stroud, Columbus police officer and security officer for the Greyhound Bus Station, testified that he had been assigned to the area of the bus station since March 1972; that on September 24, 1974, after a conversation with Mr. Mosel, he saw defendant in the bus station; that in response to questions by Stroud the defendant stated that he had no bus ticket and that he had no business in the bus station; that he, Stroud, told defendant that he had been warned before and, that, if he saw the defendant in the bus station again he would be arrested for criminal trespass; that in the evening of September 26, he saw defendant in the restroom of the bus station engaged in an argument with an elderly man, accusing the elderly man of following him around; that when he asked defendant if he had a bus ticket, defendant replied, "No," whereupon, the officer said, "Come with me," and the defendant ran and departed from the bus station, whereupon the officer subsequently filed a warrant for defendant, upon which the defendant was later arrested, upon which these charges were brought.

> Defendant testified that both Mr. Mosel and Officer Stroud had told him to leave the premises and that for the past year and a half he had been going in and out of the bus station selling rings, trinkets, and novelties "* * * maybe three days" a week.

See 28 U.S.C. § 2254(d).

The ordinance in question is § 2305.-04(A)(3) of the Ordinances of Columbus,

which provides, in pertinent part, as follows:

No person, without privilege to do so, shall do any of the following:

\* \* \* \* \* \*

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, . . . .

Mr. Davis argued in the state intermediate appellate court that the ordinance is "vague and sets no ascertainable standards," that it is over-inclusive in defining who may give notice of unauthorized presence, that such notice had not in fact been given to Davis by a proper party, and that the statute does not sufficiently define what presence is unauthorized. In the course of rejecting these assignments of error, the appellate court placed a judicial gloss upon the ordinance. First, the court held that "implicit in the wording of the ordinance is the requirement that the actual communication to the offender be given by the owner, or the owner's authorized agent, of the land or premises in question." Second, the court determined, rather tautologically, that the words "unauthorized presence" as used in the ordinance means that presence "to which notice has been given by actual communication by the owner, or the owner's authorized agent, that privilege to access or presence is denied." So construed, the ordinance reads in effect as follows:

No person, without privilege to do so, shall . . . [r]ecklessly enter or remain on the land or premises of another, as to which notice has been given by actual communication by the owner, or the owner's authorized agent, that access or presence is denied.

The Court does not find the ordinance to be impermissibly vague either as written or as later construed. "Privilege" is defined by § 2301.14(K) of the Ordinances as

an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity.

To act "recklessly" is defined by § 2301.-06(C) as follows:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.

 An ordinance is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). If the ordinance as enacted is read together with the definitions of "privilege" and "recklessness," it does, in my opinion, place a reasonable man on notice that absent a specified privilege, continued presence on the premises of another after actual notice by persons such as Messrs. Mosel and Stroud will result in liability for criminal trespass. Petitioner insists that the ordinance does not adequately place one on notice as to what unauthorized presence is privileged. He states, "As a member of the public using quasi-public facilities to conduct a lawful business, Walter Davis should stand like any other person having privilege to be on the premises as a business invitee." This argument ignores the fact that the evidence adduced at trial could reasonably indicate that Davis was present at the bus terminal for purposes of conducting his own business, not for purposes of conducting business with Greyhound. Nor does the definition of "privilege," fairly read, lend itself to an interpretation which would preclude an owner of business premises from invoking the protection of the ordinance simply because the trespasser originally entered the premises lawfully as a business invitee. The Court is convinced that the § 2305.04(A)(3) of the Ordinances of Columbus gives fair notice that failure to leave the premises of another after *actual* notice that one's presence is unauthorized will result in criminal liability. This is not a case, like *Smith v. Goguen*, 415

U.S. 566, 578, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) and *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), in which a legislative enactment is so imprecise as to fail to specify the standard of conduct which is proscribed.

Petitioner also argues that the ordinance is overbroad in its sweep, catching constitutionally protected activity which, he impliedly asserts, he should have standing to complain about here. At one point he states that the ordinance "acts as prior restraint on a person who desires to express his first amendment freedom and in the case at bar upon a person who desires to utilize the services of the Greyhound Bus Station in exercising his freedom to travel." He relies upon *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) for the proposition that the Constitution protects interstate travel as a fundamental right.

■ The overbreadth doctrine in operation essentially constitutes a relaxation of traditional Article III standing principles to permit a litigant to level a constitutional attack upon a legislative enactment which encroaches certain preferred constitutional freedoms, notably the right of free speech, even though the litigant was not himself exercising such freedoms at the time of his arrest. The doctrine is a highly intricate one. Mr. Justice White's lucid treatment of overbreadth in *Broadrick v. Oklahoma*, 413 U.S. 601, 610–618, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), is worthy of attention. To the extent that petitioner is arguing that he should have standing to contend that the ordinance involved here suffers from a First Amendment infirmity, the following language from *Broadrick*, 413 U.S. at 615–16, 93 S.Ct. at 2917 (footnote omitted), is his answer:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and

that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United States*, 394 U.S. 165, 174–175, [89 S.Ct. 961, 966–967, 22 L.Ed.2d 176] (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that § 818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

■ Nor does the Court accept petitioner's argument that § 2305.04(A)(3) of the Ordinances of Columbus violates his right to interstate travel, either on its face or as applied. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) invalidated as violative of the Equal Protection Clause state statutory provisions which conditioned welfare benefits upon a one-year duration of residency within the state; in the course of determining whether the statutes served a legitimate state purpose, the Court indicated that a "purpose of deterring the in-migration of indigents" could not enter into the balance, because the right to interstate travel makes such a purpose "constitutionally impermissible." 394 U.S. at 631, 89 S.Ct. at 1329. The heart of *Shapiro*—a legislative enactment which distinguishes between classes of persons solely on the basis of the exercise of their right to move in interstate commerce—is

simply not present in the instant case. *Shapiro* does not, in my judgment, limit the police power of the states to regulate certain modes of conduct simply because the conduct occurs in a facility used by the public in the course of interstate travel.

Upon a review of all the materials of record herein the Court discerns no substantial federal question presented, and, accordingly, the motion is well-taken.

It is ORDERED that the petition be, and it hereby is, DISMISSED. It is further ORDERED that the stay entered herein on March 12, 1976, and continued by order of March 23, 1976, is hereby vacated.