**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenneth Preston WESTBROOK, Defendant-Appellant.**

No. 86–5234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1987.

Decided May 14, 1987.

Nancy L. Worthington, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Pamela J. Naughton, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Frank M. Murphy, III, San Diego, Cal., for defendant-appellant.

Before WALLACE, TANG and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Kenneth Preston Westbrook appeals his convictions of illegally purchasing and receiving military property belonging to the United States in violation of 18 U.S.C. §§ 641 and 1024 (1982). Westbrook contends:

First. Section 1024 is unconstitutionally vague.

Second. The district court failed to dismiss several counts on the indictment which referred to the same set of facts as other counts.

Third. The district court should have dismissed the section 1024 counts because the indictment failed to state the proper criminal intent. We affirm.

## I.

In 1982, the Federal Bureau of Investigation (hereinafter FBI) and the Naval Investigative Service (hereinafter NIS) commenced an investigation entitled "Operation Rip-Stop" to identify and prosecute marines and "surplus" dealers around San Diego, California involved in the theft and resale of military property from the Marine Corps Base at Camp Pendleton, California.

Westbrook, a surplus dealer, operated Vista Surplus in the Oceanside area. Westbrook purchased military property from an individual after being told that the property was stolen from Camp Pendleton. This occurred on nine occasions.

The FBI and the NIS also established an undercover store, Golden State Surplus (hereinafter GSS), near Camp Pendleton. Shortly after GSS opened, Westbrook visited the store and purchased military poncho liners from an undercover agent, although the agent told him that the property was stolen from marines at Camp Pendleton. Westbrook purchased gear from GSS on nine other occasions.

Finally, the FBI and NIS recruited several active-duty military policemen to attempt to sell their issued gear to surplus dealers. Westbrook bought military property from

one of these servicemen. The military policeman told Westbrook that that he was a marine and that the gear he was selling was issued to him by the Marine Corps.

At the conclusion of the investigation, Westbrook's store was searched. Sales receipts were seized which revealed that Westbrook had purchased gear from marines since 1979. Agents traced the names of three marines who appeared frequently on the sales slips. The marines admitted stealing military property and selling it to Westbrook. Westbrook knew the individuals were marines and that they had stolen the military property when he purchased the property from them. Westbrook asked them to sell him more military equipment, to recruit other marines to do the same, and advised them how to conceal their activities.

Each of Westbrook's contentions are questions of law which we review *de novo. United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## II.

Westbrook contends that 18 U.S.C. § 1024 is vague because "it fails adequately to guide and protect persons who are in the legitimate business of dealing in military surplus property." Section 1024 provides:

> Whoever purchases, or receives in pledge from any person any arms, equipment, ammunition, clothing, military stores, or other property furnished by the United States under a clothing allowance or otherwise, to any member of the Armed Forces of the United States or of the National Guard or Naval Militia, or to any person accompanying, serving, or retained with the land or naval forces and subject to military or naval law, or to any former member of such Armed Forces at or by any hospital, home, or facility maintained by the United States, having knowledge or reason to believe that the property has been taken from the possession of or furnished by the United States under such allowance, or

otherwise, shall be fined not more than $500 or imprisoned not more than two years, or both.

Westbrook argues that prohibiting surplus dealers and himself from purchasing or receiving military property "from any person" is unconstitutionally vague because "the entire military surplus industry of this country which is in the business of purchasing from the government used, rejected and surplus military equipment stands in peril of being prosecuted for a violation of § 1024."

"A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, *see Coates v. City of Cincinnati*, 402 U.S. 611, 614 [91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) ] . . ., or if it invites arbitrary and discriminatory enforcement, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 [92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) ]. . . ." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir.1984). "The threshold question in any vagueness challenge is whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in the particular case." *Id.* at 1346. Since Westbrook challenges the statute as unconstitutionally vague both facially and in its application, we scrutinize each of the claims under separate headings.

## A.

We first must decide whether section 1024 is vague on its face. Facial vagueness is not common because "ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute 'to attack [the statute] because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'" *Schwartzmiller*, 752 F.2d at 1346 (quoting *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974)).

The Supreme Court has explained how we may determine whether facial statutory review is appropriate in response to a facial

vagueness challenge. In a facial challenge to the vagueness of a law,

> assuming the enactment implicates no constitutionally protected conduct, [the court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982) (footnote omitted). Thus, the Court has recognized that a party has standing to challenge a statute facially if "no standard of conduct is specified at all," *Parker*, 417 U.S. at 757, 94 S.Ct. at 2562, that is, if the statute "is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 497; *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ Section 1024 is not facially unconstitutional for three independent reasons. First, section 1024 implicates no constitutionally protected conduct, substantial or otherwise. Second, section 1024 is not so vague as to specify "no standard of conduct" at all in any application. The standard of conduct which Congress prohibited under section 1024 is clear: A person who (1) purchases, or receives in pledge, (2) from any person, (3) United States military property furnished under a clothing allowance or otherwise, (4) having knowledge or reason to believe the property has been taken from the possession of the United States under such allowance, violates 18 U.S.C. § 1024. Finally, as discussed *infra* in Section II.B. of this opinion, Westbrook's facial attack of section 1024 fails because an individual "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others." *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191 (footnote omitted). Thus, Westbrook is subject to the usual canons of restraint in the exercise of judicial review and may not attack

section 1024 on its face, but only as applied to his conduct. *Schwartzmiller*, 752 F.2d at 1348.

### B.

■ Westbrook next challenges the statute as unconstitutionally vague as applied to him and to other surplus dealers. Westbrook, however, fails to explain how the statute as applied to him is vague. He argues instead that since Congress enlarged the scope of 18 U.S.C. § 1024 in 1918 to prohibit the purchase or receipt of military property "from any person," whereas previously, purchase or receipt was prohibited only "from any soldier, officer, sailor, or other person called into or employed in the military or naval service," the enforcement of the statute "would effectively close down the entire legitimate surplus industry of which appellant is a member."

Under the plain meaning of the words of the statute, Congress has made clear its intention to prohibit the purchase from any person of United States military property furnished under a clothing allowance or otherwise, having knowledge or reason to believe the property has been taken from the United States under such allowance. In the instant case, the record reveals that on numerous occasions, Westbrook purchased military property furnished under a clothing allowance with the knowledge that the property had been taken from the United States Marine Corps. Westbrook does not challenge the sufficiency of the evidence. Moreover, Westbrook may not complain that section 1024 is vague as applied to others. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191 (footnote omitted). Thus, Westbrook's facial attack must fail.

### III.

■ Westbrook contends the district court committed reversible error by refusing to dismiss 21 counts in the indictment. The indictment contained 42 counts of violating 18 U.S.C. §§ 641 and 1024 where only 21 underlying transactions occurred. Westbrook argues that 21 of the

counts are duplicative because the elements of the offenses for both sections are virtually identical.

An indictment is not duplicative if each count requires proof of a fact which the other does not. *United States v. Roberts*, 783 F.2d 767, 769 (9th Cir.1985); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In determining whether a count requires proof of a fact which the other does not, "[t]he elements of the offense are determinative, even if there is substantial overlap in their proof." *United States v. Solomon*, 753 F.2d 1522, 1527 (9th Cir.1985).

Sections 641 and 1024 contain different elements of proof. For example, section 641 requires the defendant to "know[ ] [the property] to have been embezzled, stolen, purloined or converted," while section 1024 does not require such knowledge, but only knowledge that the property was government issue. This is sufficient to overcome a claim that the indictment was duplicative. Thus, Westbrook's contention that 21 counts on the indictment were duplicative fails.

## IV.

Westbrook contends the district court committed reversible error by failing to dismiss the section 1024 counts because the statute does not specify the requisite criminal intent. Westbrook also argues that the statute should require specific intent.

To convict an individual under 18 U.S.C. § 1024, the government must prove beyond a reasonable doubt that the defendant had "knowledge or reason to believe that the property has been taken from the possession of or furnished by the United States...." The requirement of "knowledge" of the origin of the property makes the statute a general intent crime. *United States v. Bailey*, 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980). Thus, section 1024 does not require specific intent.

The jury in this case was instructed that the evidence must show that Westbrook "knew or had reason to believe that it was

wrong to purchase such property." Westbrook was convicted under a higher standard of proof than required by the Congress. Thus, his contention that section 1024 is a specific intent statute is erroneous.

AFFIRMED.