DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Michael Andrews has appealed from his conviction in the Akron Municipal Court of menacing by stalking, a violation R.C. 2903.21.1. This Court affirms.
 I.
In July 1997, as a result of a mistaken belief that Michael Morrison had stolen his pool cues, Defendant began a pattern of harassment involving numerous individuals that would eventually lead to his arrest. Based on Defendant's behavior, Thomas Morrison, Michael Morrison's father, filed a complaint with the Akron Police Department.
On September 16, 1998, Defendant was charged with one count of menacing by stalking, a violation of R.C. 2903.21.1. Prior to trial, Defendant moved the trial court to declare R.C. 2903.21.1 unconstitutional. The court denied his motion. This matter was tried to the court on October 14, 1999.
At trial, Scott Miller testified regarding his confrontations with Defendant. Mr. Miller testified that he was at Arnie's Standing Room Only (Arnie's), in Akron, Ohio, playing pool during July 1997. He testified that Defendant came up to him and started demanding his pool cue. Defendant shoved his right index finger under Mr. Miller's chin and started "yanking" him around. The bartender broke up the confrontation. Mr. Miller stated that that was the first time he had ever met Defendant.
On March 5, 1998, Mr. Miller had another confrontation with Defendant at Arnie's. He stated that Defendant walked past him and again requested his pool cues. Mr. Miller said, "You still think I'm the guy that did that to you?" According to him, Defendant responded, "Don't try to play me. I'll rip you in fucking half." Defendant then walked away.
Finally, Mr. Miller testified regarding a third confrontation with Defendant. Mr. Miller stated that he was preparing to drive his vehicle from a parking lot when Defendant drove up in a van. Defendant parked the van in a position that prevented Mr. Miller's vehicle from leaving the parking lot. Defendant started banging on the driver's side window of Mr. Miller's vehicle and began screaming about his pool cues. After a few minutes, Defendant got back into his van and backed it up enough to allow Mr. Miller to exit the parking lot. Defendant then followed Mr. Miller through the city of Fairlawn. Mr. Miller drove to the Fairlawn Police Department to file a report. While Mr. Miller was waiting, Defendant approached him in the lobby demanding his pool cues. Officer Rick Jacobs separated the two men and questioned them separately. After speaking with Defendant, Officer Jacobs determined that Defendant had mistaken Mr. Miller for Michael Morrison and relayed this information to Mr. Miller.
Mr. Miller then went to talk to the Morrisons to try to figure out what the problem was with the pool cues. He testified that he went to talk to them because he wanted to know if Michael Morrison had, as Defendant claimed, taken the pool cues. He informed the Morrisons about his problems with Defendant, and informed them that Defendant had been harassing him under the mistaken belief that he was Michael Morrison.
Michael Morrison testified that the first encounter he had with Defendant was during September 1997. He was sitting at a table at Arnie's with a friend when Defendant walked over and placed a business card on the edge of the table. Then Defendant looked at him in a "peculiar" fashion and walked away. Later, Michael Morrison and his friend got up from the table to play video games. Defendant went over to them with the same card, set it beside them, and said "I think you forgot this."
Later that evening, when Michael Morrison and his friend were leaving, Defendant approached them in the parking lot. Michael Morrison testified that Defendant was walking toward the car and trying to flag them down in an excited fashion. He stated that they did not stop to talk to Defendant because they were frightened. Defendant hit the car a few times, and then, Michael Morrison and his friend drove off. Michael Morrison testified that the only other encounter he had had with Defendant was at small claims court in July 1998.
Thomas Morrison, testified that, at the end of October 1997, a letter was sent to his home. The letter was addressed to his son, Michael Morrison, and had a return address of 210 South Miller Road, 44333. The letter contained the message, "Mike last request $492.00 cashier check or cash. For pool ques (sic) 
Bag!!" and was signed, "Thanks Mike Andrews." Subsequently, a similar letter, also addressed to Michael Morrison, was sent to Thomas Morrison's home. The return address on this letter was 210 South Miller Road, but had a different zip code, 44313. This second letter had Mike Andrew's name at the top and again requested payment for the pool cues as well as an additional charge for something that is illegible. This letter indicated that $496.74 was due and payable and contained the notation "may have to litigate."
In order to ascertain what the letters were about, Thomas Morrison drove to 210 South Miller Road in Akron, Ohio. He learned from the woman who answered the door that Mike Andrews lived there, but he was not home at that time. The woman gave Thomas Morrison his pager number. Thomas Morrison called the pager number and left his home phone number.
Subsequently, Thomas Morrison received a telephone call from Defendant. Thomas Morrison attempted to discuss the letters with him, informing Defendant that his son had no idea what the letters were about. Defendant, however, refused to discuss the matter over the phone. Instead, he suggested that Thomas Morrison should meet him somewhere to discuss the matter. Thomas Morrison told Defendant that he would rather discuss the matter on the phone, but Defendant continued to attempt to persuade him to meet him somewhere. Thomas Morrison refused the meeting and terminated the conversation.
Several more letters, addressed to Mike Morrison, arrived at the Morrison residence. All of the letters had the same return address as the previous letters and the same handwriting. One of the letters received was a pre-printed small claims interview form signed by Defendant. Defendant was listed on the form as the plaintiff, and Michael Morrison was listed as the defendant.
Three of the letters Thomas Morrison received were homemade greeting cards. The front of the first card stated, "Why don't you come over to my place? We'll have a few beers, talk awhile, then maybe I will crack open some raisin-and-sardine dip." The inside of the card said: "We'll talk about pool cues." The back of the card contained the notation: "Made just for you by Mike."
The front of the second card stated, "No special news to tell you, not very much to say, MILE (sic)!!!" The inside of the card said: "just wanted you to know that you're thought about today! ALWAYS thinking of you Mike A." The back of the card contained the notation: "High-flying wishes from Mike A."
The front of the third card was a picture. The following message was on the inside of the card:
 Michael!!!!!! time is so precious these days — it seems there isn't enough of it to do everything we want to do You've taken the time for me and made me feel important and cared for. I don't quite know how to thank you but I want you to know how much your kindness means to me. Always Mike.
The back of the card contained the notation: "Roses are red, violets are blue, Mike made this especially for you."
The State also presented the testimony of Cynthia Morrison, the daughter of Thomas Morrison. She testified that she lives at home with her parents. Sometime in early February, she received a phone call at the Morrison residence from a man who identified himself as Defendant and asked to speak to Mike. She informed Defendant that Mike was not at home and asked if she could take a message. Defendant told her to tell Mike that he wanted his money or he would contact an attorney.
On February 23, 1998, Thomas Morrison sent a certified letter to 210 South Miller Road addressed to Mike Andrews. In that letter, Thomas Morrison stated that Michael Morrison no longer lived at the Morrison residence, and that he did not leave a forwarding address. Thomas Morrison also requested that no more letters be sent to his home and no more phone calls be placed to his home. Mr. Morrison received the return receipt signed by either "L or K" Andrews.
On or about April 25, 1998, another letter, addressed to "Master Michael Morrison," with the return address of 210 South Miller arrived at the Morrison residence. The envelope contained what appeared to be a printed pamphlet from the Akron Bible Church. The front of the pamphlet contained the handwritten notation: "Thou shall not steal." Thomas Morrison testified that the handwriting was similar to the handwriting on the previous letters received from Defendant.
During May 1998, the Morrison family informed the Akron Police Department that Defendant had been harassing them. Sergeant Michael Caperz, from the Akron Police Department, testified that he received the information and went to speak with the Morrisons about the problem. As a result, Sergeant Caperz located Defendant and discussed the situation with him. Defendant informed Sergeant Caperz that a red-haired man driving a Jeep Cheroke had stolen his pool cues. Sergeant Caperz testified that he informed Defendant that Michael Morrison did not fit that description. According to Sergeant Caperz, Defendant seemed convinced that Michael Morrison was not the person who stole the pool cues and agreed that he would have no further contact with the Morrison family.
At some point, Defendant filed a complaint in small claims court alleging that Michael Morrison stole his pool cues and bag. On July 23, 1998, a trial was held before a magistrate. The magistrate found that Defendant failed to prove that Michael Morrison stole his pool cues and bag.
On or about September 9, 1998, a letter addressed to Thomas Morrison arrived at the Morrison residence. The letter did not have a return address. One of the items in the envelope was a document that contained, among other things, the printed notation: "This could be your free ticket to heaven." Also, the envelope contained a photocopy of Michael Morrison's high school graduation picture. Underneath the photo was the following handwritten notation:
1. Pool cue theif (sic)
2. Harassment of attorney
3. Coersion (sic)
4. Family distroyer (sic)
5. Discipal (sic) of satan
6. Vihiilal (sic) assault
7. Drug dealer
Finally, what appears to be a photocopy of two pages of the Bible with certain portions circled and/or underlined was included. This page also contained the handwritten notation: "Profile of one who follows Satan."
John Morrison, Thomas Morrison's nephew, testified that, sometime in late September, Defendant came to the fire station where he worked and asked about Thomas Morrison. He stated that Defendant gave him a business card to give to Thomas Morrison. After he gave the card to John Morrison, he said, "If I don't hear from him, I'll be disappointed."
The last letter arrived at the fire station where John Morrison worked. John Morrison testified that the letter was addressed to John Morrison, attention "fire chief." He stated that the letter was in his mail slot at the fire station so it was most likely received at the main fire station and sent to his station via the interdepartmental mail system. The letter requested the "fire chief" to speak to "Tom Morrison, Sr. a fireman" and requested $600.00. John Morrison personally delivered that letter to Thomas Morrison.
Because of Defendant's behavior, Thomas Morrison stated that he and his family changed their normal routines and lived with the constant fear that Defendant was going to harm them. Thomas Morrison had spoken with his supervisors in an attempt to alter his working schedule so that his wife and daughter would not be alone at night. Also, he and his wife canceled a vacation so that their daughter would not be in the house alone, he had arranged to have security lights installed around his house, and he had asked the neighbors to keep an eye on the house.
At the close of the State's case, Defendant moved the trial court for an acquittal pursuant to Crim.R. 29(A). The court denied his motion. Defendant did not present any witnesses or testify on his own behalf; instead, he rested his case and renewed his Crim.R. 29(A) motion. The court denied the motion, found Defendant guilty, and sentenced him. Defendant timely appealed, asserting two assignments of error.
 II. A. The trial court erred in finding [Defendant] guilty of menacing by stalking, pursuant to R.C. 2903.21.1, as there was insufficient evidence to support this finding.
In his first assignment of error, Defendant has argued that his conviction was not supported by sufficient evidence. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386 ("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
R.C. 2903.21.1(A) provides:
 No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
Defendant has argued that the State failed to offer sufficient evidence that: (1) he "knowingly" caused physical harm or mental distress, and (2) the victim had a belief of impending physical harm. Defendant's arguments are without merit.
First, Defendant has asserted that the State failed to offer sufficient evidence that he "knowingly" caused physical harm or mental distress. R.C. 2901.22(B) states:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
The State presented evidence that Thomas Morrison sent Defendant a certified letter informing him that Michael Morrison did not live at that address and requesting him not to send any more letters to his house. After that letter was received, Defendant continued to send letters to the Morrison residence addressed to Michael Morrison.
Next, Thomas Morrison informed the Akron Police Department that Defendant was harassing his family. Sergeant Caperz spoke with Defendant regarding the problem. Defendant told him that he would have no further contact with the Morrisons. Subsequent to his encounter with the Akron Police Department, Defendant took Michael Morrison to small claims court. He lost his case because he was unable to prove that Michael Morrison stole his pool cues.
Despite the certified letter, the encounter with the Akron Police Department, and his loss in small claims court, Defendant continued to send letters. However, Defendant began referring to Thomas Morrison in those letters. Additionally, Defendant attempted to seek out Thomas Morrison at the fire station and sent a letter about him to John Morrison at the fire station.
That evidence, if believed, could cause a rational trier of fact to believe that Defendant was aware that his continued harassment would cause Thomas Morrison mental distress or cause him to believe that Defendant would cause him physical harm. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved beyond a reasonable doubt that Defendant acted knowingly. The evidence, therefore, was legally sufficient to support the trial court's verdict as a matter of law.
Second, Defendant has asserted that the State failed to present evidence that the victim had a belief of impending physical harm. The State presented the testimony of Thomas Morrison. Thomas Morrison testified that he and his family lived in constant fear that Defendant would harm them. He also testified that he had changed his normal routines as a result of Defendant's actions. He had security lights installed around his home, cancelled a vacation so that his daughter would not be in the house alone, attempted to alter his working schedule, and asked his neighbors to keep an eye on his house.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved beyond a reasonable doubt that the victim had a belief of impending physical harm. The evidence, therefore, was legally sufficient to support the trial court's verdict as a matter of law. Accordingly, Defendant's first assignment of error is overruled.
 B.
The court erred in finding that R.C. 2903.21.1 was not unconstitutionally vague, and violative of [Defendant's] Fourteenth Amendment right of due process.
In his second assignment of error, Defendant has argued that R.C. 2903.21.1 is unconstitutionally vague. He has asserted that the statute lacks a "reasonableness" standard; therefore, an innocent person may be convicted of violating the statute due to the subjective beliefs of an alleged victim. This Court disagrees.
Legislative enactments are afforded a strong presumption of constitutionality. State v. Collier (1991), 62 Ohio St.3d 267,269. When possible, statutes are to be construed in favor of conformity with the Ohio and United States Constitutions. Id. A party asserting that a statute is unconstitutional must prove that the statute is unconstitutional beyond a reasonable doubt. Id.
When asserting that a statute is unconstitutional because it is void for vagueness, the challenging party must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Coates v. Cincinnati (1971), 402 U.S. 611,614, 29 L.Ed.2d 214, 217. Therefore, the challenger must show that, after examining the statute, a person of ordinary intelligence would not be able to understand what he is required to do under the law. State v. Anderson (1991), 57 Ohio St.3d 168,171. Accordingly, the challenger must prove beyond a reasonable doubt "that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." Id.
When analyzing a statute under the void-for-vagueness doctrine, a three-part analysis must be applied. Collier,62 Ohio St. 3d at 269. First, the wording of the statute must provide fair warning to the ordinary citizen so that citizens may conform their behavior to the requirements of the statute. Id. at 270. Second, the wording of the statute must preclude arbitrary, capricious and discriminatory enforcement. Id. Finally, the wording of the statute should not unreasonably impinge or inhibit fundamental constitutionally protected freedoms. Id.
Defendant has asserted that, because the statute lacks a reasonableness standard, a violation of the statute depends on the subjective effect that an act has on an individual. Therefore, he has asserted that the statute is vague because whether a crime was committed depends on how the alleged victim perceived the circumstances. Accordingly, Defendant has contended that "innocent citizens" could be arrested and convicted as a result of conduct that they did not realize was prohibited. Defendant has misconstrued the language of the statute.
The determination of whether the statute was violated does not, as Defendant has asserted, depend on the subjective perception of the victim. Rather, in order to violate the statute, a defendant must act knowingly. See R.C. 2903.21.1. As previously stated, pursuant to R.C. 2901.22(B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
Therefore, in order to show that a defendant violated R.C. 2903.21.1, the State must show that the defendant engaged in conduct that he knew would probably cause the complainant to believe that defendant would harm him or that he knew would probably cause the complainant to suffer from mental distress. Accordingly, a defendant cannot be convicted based on the subjective beliefs of a particular complainant. If a defendant knows his behavior will cause the complainant distress, the defendant is not at the whim of the complainant to determine what behavior is prohibited. Therefore, the statute does not require a reasonableness standard. Defendant's second assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE, FOR THE COURT
BAIRD, P.J., BATCHELDER, J., CONCUR.